**SHEARIN CONSTRUCTION, INC., and Tricia S. Tharpe, Plaintiffs,**

**v.**

**Norman Y. MINETA, Secretary of U.S. Dept. of Transportation, Defendant.**

**No. CIV.A. 3:02CV100.**

United States District Court, E.D. Virginia, Richmond Division.

Sept. 27, 2002.

---

Scott Gregory Crowley, Crowley & Crowley, Richmond, VA, for Plaintiffs.

Debra Jean Prillaman, Office of the U.S. Attorney, Richmond, VA, Laura Christine Fentonmiller, Paul Maitland Geier, U.S. Department of Transportation, Office of the Chief Counsel, Washington, DC, for Defendant.

## MEMORANDUM OPINION

DOHNAL, United States Magistrate Judge.

This matter is before the Court by consent of the parties (28 U.S.C. § 636(c)(1)) on cross motions for summary judgment pursuant to Fed.R.Civ.P. 56. Jurisdiction is proper under the Administrative Procedure Act (APA), 5 U.S.C. § 702(2), and the Civil Rights Act of 1964, 42 U.S.C. § 2000d–1. The Plaintiffs, Shearin Construction Corporation (Shearin) and its sole owner, Tricia S. Tharpe (Tharpe), appeal the Defendant's decision to deny Shearin status as a Disadvantaged Business Enterprise (DBE) pursuant to a regulatory scheme that is intended, among other things, "[t]o create a level playing field on which DBEs can compete fairly for DOT-assisted [U.S. Department of Transportation] contracts." 49 C.F.R. § 26.1(b).

### Procedural History

The DBE program is administered on behalf of the DOT in Virginia pursuant to the Surface Transportation Act and related statutes [1] by the relevant state agency,

---

1. The designation of a business as a DBE is important because the Surface Transportation Act and related statutes require that no less than ten percent of funds spent on federally-funded highway and transit projects "shall be

the Virginia Department of Transportation (VDOT). Shearin applied for certification as a DBE with VDOT on or about February 16, 2001, after becoming incorporated and commencing business on or about November 8, 2000. (Admin.R. (AR) at 102, 146). VDOT conducted the required "on-site" visit on April 2, 2001, to inspect all financial, management, and operational aspects of the applicant. VDOT then issued a preliminary determination to deny Shearin's certification by letter dated April 30, 2001. (AR at 64–66, 81, 87; 49 C F.R. § 26.83(c)(1)). An informal hearing was held thereafter on May 16, 2001, to provide the Plaintiffs with the opportunity to address issues raised in the preliminary determination and to submit additional evidence. (AR at 50–61; 44–49). VDOT issued its final decision denying certification by letter dated May 31, 2001, finding that "the actual management and control of Shearin Construction, Inc. does not appear consistent with the requirements of the program for management and control by the minority/female owner." (AR at 41–42). Shearin appealed the VDOT's adverse decision to the DOT as provided by regulation. (AR at 3–9). The DOT affirmed the VDOT decision by letter of January 18, 2002, after review and supplementation of the record, finding that the ownership and control of Shearin by Tharpe was not "real, substantial and continuing as required." (AR at 11–33). The Plaintiffs thereafter sought judicial review of DOT's adverse decision pursuant to the Administrative Procedure Act by filing the instant Complaint on March 25, 2002.

### Standard of Review

Summary judgment is only to be granted when there is no genuine dispute as to any issue of material fact when all justifiable inferences are drawn in favor of the non-moving party and the movant is entitled to judgment as a matter of law. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In essence, the Court must decide if the evidence when viewed in the light most favorable to the non-moving party "presents a sufficient disagreement to require submission to the [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 251–252, 106 S.Ct. 2505. In addition, in reviewing an agency's decision as in this case pursuant to the APA, a court may not substitute its own judgment for that of the agency and the agency's decision must stand unless it is demonstrated on review of the entire administrative record that the agency's decision was arbitrary and capricious or otherwise constituted an abuse of discretion in violation of law. 5 U.S.C. § 706(2)(A). 5 U.S.C. § 706; *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Trinity Am. Corp. v. EPA,* 150 F.3d 389, 395 (4th Cir.1998) (quoting *Nat'l Res. Def. Council, Inc. v. EPA,* 16 F.3d 1395, 1401 (4th Cir.1993)).

### Questioned Presented

Whether there is substantial evidence in the record to support the Defendant's decision such that it was not arbitrary and/or capricious or otherwise in violation of the law. *See* 49 C.F.R. § 26.89(f)(1).

### Analysis

The Secretary of the Department of Transportation (DOT) has promulgated rules and procedures for determining whether an entity qualifies as a DBE. To qualify, an entity must establish that it

---

expended with small business concerns owned and controlled by socially and economically disadvantaged individuals" as de-

fined. Pub.L. No. 97–424, 96 Stat. 2097, 2100 (1983).

meets the stated requirements for "group membership or individual disadvantage, business size, ownership, and control." 49 C.F. R. § 26.61(b). In this case, there is no dispute over Plaintiff Tharpe's status as a "socially and economically disadvantaged individual" because of her female gender. Likewise, there is no dispute that Shearin, the Plaintiff business, meets the definition of a small business as required by the Small Business Act. 49 C.F.R. § 26.5, 26.65. Rather, the issue concerns the necessary elements of control and management, that is, whether the Plaintiff Tharpe sustained her burden of establishing that her ownership and management of Shearin was "real, substantial, and continuing" as required. 49 C.F.R. §§ 26.69(c); 26.71.

The Defendant affirmed the VDOT's decision that the Plaintiffs did not sustain their burden because of: (1) Shearin's lack of independence from a non-disadvantaged entity [2]; (2) Tharpe's lack of "real and substantial" contribution of capital or special expertise to acquire her sole ownership interest in Shearin; and/or (3) Tharpe's lack of sufficient management and control of the operations of Shearin, including "an overall understanding of, and managerial and technical competence and experience directly related to, the type of business in which the firm is engaged and the firm's operations." 49 C.F.R. § 26.71(g); AR at 3–8. The Plaintiffs assert that the agency's final decision was: "(a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) contrary to constitutional right, power, privilege or immunity; (c) short of statutory right; and (d) unsupported by substantial evidence and unwarranted by the facts; are in violation of the APA." (Pls.' Mem. Opp'n Def.'s Mot. Summ. J. and in Supp. Pls.' Cross Mot. Summ. J. (Pls.' Mem.) at 2).[3]

### Lack of Independence

■ A review of the administrative record discloses the following evidence regarding the issue of whether Shearin was an independent business which is defined by the controlling regulation as "one the viability of which does not depend on its relationship with another firm or firms":[4]

1. Of the three projects listed in Shearin's application as having been completed before the application was submitted, the largest one ($62,500 or 56% of combined contract amounts of $110,226) was for Tharpe's husband's uncle's business, Curtis Tharpe Trucking (Tharpe Trucking). (AR at 86, 148).

2. Tharpe did additional work for her husband's uncle (Curtis Tharpe) and/or Tharpe Trucking for a reported $50,000,[5] the first half of which ($25,000) was paid in the form of a CD that had been issued in the joint names of Tricia Tharpe and Curtis Tharpe. (AR at 46–47, 59, 86).

---

**2.** The presumed purpose, of course, for the requirement is to preclude a business from acting as a "front" for another entity that would not otherwise be entitled to the benefits of DBE certification. Plaintiff's counsel urged during oral argument that it had to be established that the applicant was impermissibly associated with a non-disadvantaged entity *in the same* business or field before being rendered ineligible. However logically appealing the argument may be, such a condition is not encompassed within the controlling regulations. 49 C.F.R. § 26.71.

**3.** The Plaintiffs do not offer any separate constitutional or statutory challenge and the Court therefore understands their position to allege violation of the APA.

**4.** 49 C.F.R. § 26.71(b).

**5.** Resulting in a combined total of 70% of Shearin's initial business coming from Curtis Tharpe and/or his business.

3. Shearin rented excavation equipment (excavator, loader, bulldozer) from Tharpe Trucking at lower than market rates. (AR at 48–49, 53–54, 92).

4. Tharpe Trucking was not in the business of renting such equipment, nor did it rent equipment to anyone else. (AR at 54, 148).

5. Tharpe's husband (Jeffrey Tharpe) worked for Curtis Tharpe. (AR at 84).

6. Shearin rented its office space from Jeffrey Tharpe. (AR at 120).

7. Shearin's DBE application listed two individuals in addition to Tharpe who were authorized representatives of the company, both of whom (Jennifer C. Bowken and Lynn C. Overby) had previously worked for a Tharpe family business associated with Jeffrey Tharpe. (AR at 55–56, 101, 147).

The Plaintiff emphasizes that in its initial denial of certification, before the informal hearing, VDOT incorrectly assumed that Shearin did not pay any amount for the lease of the equipment from Tharpe Trucking. Yet, even after Tharpe provided evidence at the subsequent hearing to establish that payments were made, albeit at reduced rates, and that Shearin made arrangements with a different, totally unrelated lessor at market rates during the review process, the same false assumption was repeated in VDOT's final notice of rejection. (Pl.'s Mem. at 20–21; AR at 64–65, 42). However, the Defendant DOT, as opposed to the VDOT, did consider such additional evidence in its subsequent re-

view that serves as the basis of the present challenge. (AR at 5). Nevertheless, DOT still concluded that the "arrangement clearly gives the appearance of a dependent relationship between the two companies contrary to the requirements of the regulation." *Id.* DOT based its decision on the family relationship involved in the initial lease arrangement, its preferential rate, and the fact that the lessor family member (according to Tharpe's own testimony) did not engage in such leasing activity with anyone else. *Id.* The Defendant did not, therefore, base his decision on an inaccurate fact or assumption as suggested by the Plaintiffs. There is otherwise a sufficient basis in the record concerning Shearin's relationship to Curtis Tharpe and/or his company, a non-disadvantaged individual or entity, that substantiates the Defendant's conclusion that there was an impermissible inter-dependency between the applicant and a non-disadvantaged entity.

### *Initial Capitalization and/or Contribution* [6]

■ The Defendant also based his ultimate decision in part on a finding that Tharpe's contributions of capital or expertise were not "real and substantial" as required to establish meaningful ownership by a disadvantaged applicant. (AR at 3–4). In his decision, the Defendant notes that "[t]he record evidence reveals that Shearin Construction was capitalized with a $25,000 Certificate of Deposit owned jointly by Tricia Tharpe and Curtis Tharpe, her non-disadvantaged husband's uncle." (AR at 3–4). The Plaintiffs emphasize, however, that Tharpe stated at the informal hearing that the CD was not

---

**6.** "Contribution" includes *special* expertise that must be documented in business records.

49 C.F.R. § 26.69(f).

acquired until after the application was submitted, that it was partial payment for a particular project, and that, in fact, she capitalized the company "with money that I saved over the years doing little small jobs to pay and I didn't have any expenses so everything that I made I was putting into an account just to make sure that I would have a good a start on a firm." (AR at 60). However, the record also reveals that when initially interviewed during the required on-site visit, Tharpe referred to the jointly-owned CD as the source of capitalization in response to the question: "List the initial contributions of the owners in the form of money (amount and proof), equipment, real estate." (AR at 82). Whether there is a sufficient basis in the record to support the Defendant's conclusion that the CD was the source of capitalization and that its joint ownership did not meet requirements for individual contribution, the Defendant noted the Plaintiffs' objections and concluded, notwithstanding the debate over the CD, that "[i]t is clear that Curtis Tharpe, through the use of his personal resources ('interest in the CD *and* lease of equipment to Shearin') has played a disproportionate role in the capitalization of this business" and that, in any event, the Plaintiffs failed to sustain their burden "to clearly demonstrate that monies utilized to acquire ownership interest in their DBE firms derived from the personal contributions of the disadvantaged

owners." (AR at 4) (emphasis added); 49 C.F.R. § 26.69(e).[7] Accordingly, where there is a basis in the record supporting the Defendant's conclusion that a non-disadvantaged party (Curtis Tharpe) had played a disproportionate role in the capitalization of Shearin *either* by the circumstances involving the CD *or* the equipment leasing situation *and* that Tharpe had not otherwise sustained her burden of persuasion by *documented* proof as required, the Court cannot conclude that the Defendant's decision was arbitrary and capricious or otherwise in violation of law.[8] 49 C.F.R. § 26.69(f)(vi).

### Operational Control

■ The final basis on which the Defendant denied certification was that a non-disadvantaged employee, Lynn Overby, possessed "the ability to control day-to-day activities of [the] excavation business" and otherwise was "disproportionately responsible for the operation of the firm" so as to rebut the Plaintiffs' assertions that Tharpe was in charge and had the experience and expertise to be more than just a *de facto* owner. (AR at 4; 49 C.F.R. § 26.71(d-e)). The record reveals the following, salient facts in regard to this issue:

1. Overby, a non-disadvantaged individual, had over twenty years of experience in specialized areas of the excavation business, *e.g.*, estimating,

---

7. The Plaintiffs emphasize again, as they did in regard to the equipment lease issue, the insufficiency of *VDOT's* conclusion that the CD was the source of Shearin's capitalization without consideration of Tharpe's explanation(s). (Pls.' Mem. at 17–18). But, again, the issue before the Court is the sufficiency of the Defendant DOT's ultimate decision, not VDOT's.

8. Although the Plaintiffs have argued in their pleadings that Tharpe also provided special-

ized expertise to satisfy the requirement, the Defendant had a basis to conclude that the unsubstantiated evidence of Tharpe's general management skills, albeit including experience in estimating and bidding, did not rise to the level of specialized skills specific and indispensable to the type of work performed as would satisfy the exacting standards required and that such "contribution of expertise and its value" was not clearly documented in the firm's records in any event. (Pls.' Mem. at 5, 19; 49 C.F.R. § 26.69(f)).

bidding, field supervision. (AR at 81–83, 144).

2. Tharpe depended on Overby to, among other things, "overlook[ ] all jobs" and she identified him as having "the key role in the company." (AR at 50–82).

3. Tharpe paid Overby either the same amount (AR at 84) or nearly the same amount of compensation she paid herself. (AR at 57).

4. Tharpe maintained exclusive authority to sign contracts, make all financial decisions (including exclusive check signing authority and selection of bookkeeper/accountant), and concurrent authority with Overby to bid projects and negotiate with contractors. (AR at 83–84).

5. Tharpe was not restricted by articles of incorporation, by-laws, or any other reason from making any business decision for Shearin (AR at 81–85, 103–115).

6. Tharpe completed a six-month apprenticeship in the excavation business. (AR at 81).

7. Tharpe had previously worked as an office manager. (AR at 58).

8. Shearin maintained a Class A contractor's license. (AR at 138).

Non-disadvantaged employees of an applicant may be delegated "various areas of the management policymaking, or daily operations of the firm" as long as the socially and economically disadvantaged owners of the firm "retain the power to hire and fire any person to whom such authority is delegated" and it is otherwise clear to the "recipient" that "the socially and economically disadvantaged owners actually exercise control over the firm's operations, management, and policy." 49 C.F.R. § 26.71(f). Here, although Tharpe identified Overby as having "the key role in the company," the evidence summarized above otherwise substantiates Tharpe's unfettered ability to make final decisions for the firm and her operational role. *See* paras. 4–5 *supra.* Furthermore, even though the regulations provide that "expertise limited to office management, administration, or bookkeeping functions unrelated to the principal business activities of the firm is insufficient to demonstrate control" and "[t]he socially and economically disadvantaged owners must have the ability to intelligently and critically evaluate information presented by other participants in the firm's activities and to use this information to make independent decisions concerning the firm's daily operations, management, and policymaking," the evidence, considered as a whole, including Tharpe's authority to negotiate contracts and deal with contractors as well as her apprenticeship and obtaining a Class A license for the firm, substantiates at least a minimum level of required expertise such that the Defendant's conclusion to the contrary is not supported by substantial evidence. It is not a situation where Tharpe must have demonstrated a higher, specialized level of expertise as an alternative to a capital contribution in establishing the company to satisfy the requirement for independence from a non-disadvantaged person or entity. Nor is it a situation as extreme as in *Car-Mar Const. Co. v. Skinner,* 777 F.Supp. 50 (D.D.C.1991), in which the applicant had absolutely no prior experience in the subject industry (steel erection), did not seek to gain any over a period of several years (as opposed to Tharpe's apprenticeship and obtaining a Class A license), and left all day-to-day operations under the management and control of her husband who

had extensive experience in the business. Accordingly, although the question is a close one, the Court finds that the Defendant's decision on this particular issue as a component of the overall resolution of the matter is not sufficiently supported by the record.

### Conclusion

This Court may not engage in a *de novo* review of the Defendant's decision; rather, it must abide by the highly deferential standard whereby the administrative decision must be upheld *unless* shown to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Furthermore, in the regulatory scheme applicable to this case, the Defendant's ultimate decision to deny certification as a DBE must be upheld if the decision can be sustained on any of the three determinative issues of contribution, independence, or control. Although the Court is not prepared to sustain the Defendant's conclusion on the issue of control, it must affirm the Defendant's decisions regarding the issues of contribution and independence. Therefore, the Plaintiffs' Motion for Summary Judgment is DENIED; the Defendant's Motion for Summary Judgment is GRANTED; and the case is DISMISSED.